All right, Mr. Dewey, the floor is yours, the podium is yours. Mr. Chief Judge, and may it please the Court, the key issue of statutory interpretation in this case is how should the Board determine whether a veteran has suffered lost wages and benefits in the face of an agency's VEOA violation? The parties offer starkly different interpretations of that statute. The agency has adopted the Board's view, which is that the way this should be done is there should be a reband to the agency. Counsel, can I ask you one quick question? I'm going to distract you for a second, I'm sorry about that, but what do you want? What is your end result here? Would a remedy that says reverse and remand, no reconstruction of the process is necessary because we have an admission that he would have been selected? Okay, obviously you want that, and that would be great, but then the question is, so then what? Do we say so, put him in that position, or do we say so, and give him back pay? The difference between Coast Guard and that, or do we say put him in the next available position? I mean, what's the remedy? Suppose I agree with you 100% on the merits, what's the remedy that we order? Well, I think that the court has recognized that prospective relief wouldn't be appropriate. What do you mean? In the Kuykendall case, the panel decision just a few, was it weeks ago, I believe. No, I believe it said it wouldn't be adequate. I don't think it said it wouldn't be appropriate. Well, it seems like an agreement with the that that would be insufficient. Insufficient? It doesn't mean inappropriate. I suppose. Totally different. But yeah, I think that the reverse and remand should be to have a retroactive selection, and to have the award of back pay, but also as we point out, we would like to- A retroactive selection. No, so are you telling us we should put him in this job? This position, that's right. Or should we say, well, but see here, this bothers me a little bit, because I don't like the idea of displacing other employees. Now, I realize this particular lady wasn't displaced, she was moved over to the desk next door. But nonetheless, I mean, in general, the idea that our court would force the government to hire someone for that specific position is a little concerning to me. That dilemma, Your Honor, points out the flaw of this reconstruction doctrine. Your opinion in Kuykendall, the en banc decision, talked about the hazards of letting these cases drag on a long time, because there's a problem with the government. If there's going to be a challenge to a hiring selection, it should be made expeditiously. If it's not, the government is at risk for paying two people for the same job. Five judges agree with you, and I don't think the majority in Kuykendall disputed that particular point. Because the person who gets into the position, even though she never should have, does inert certain employee rights that justify ... She can't just be plucked out of it. All the more reason to honor the congressional goal that these cases be decided within 120 days of filing. That is the goal of Congress. It's the opt-out provision of 3330B, section B. But you're not going to tell us we have to order them, you got to do it quicker next time? That doesn't really help your clients. Mainly, it was air for the full board to do what it did in Marshall IV. There was no reason, and it was inconsistent with the VEOA to do what the board did in Marshall IV. It never should have done this remand. It had everything it needed in the record before it. And that's the key air that I think is very important precedentially. Of course, Mr. Marshall seeks what your Honor just mentioned, but he also cares very deeply about veterans generally, and hopes that the court will look at what happened in Marshall IV and say, that was wrong. And it needs to be reversed, it needs to be addressed directly, not just the particular benefit to him. But wouldn't we be saying it's wrong if we agreed with you that a reconstruction in a case where the government has acknowledged that he would have gotten the job is unnecessary and inappropriate? I mean, this case actually reminds me a little bit of the one we just had, right? I mean, you've got a government admission regarding who would have gotten the contract there, you've got a government admission here regarding who would have gotten the job if he had properly been considered. If I'm understanding you correctly Judge Moore, it seems like you're asking for, might we just resolve this on narrower grounds than what Mr. Marshall seeks. I don't know if I understand that right, but I think the reason is again that there's very few opportunities for the court to address this issue. As we found out in Weed just a few months ago, there is no appellate jurisdiction for those reconstruction orders. So this is as good as it's going to get for the court to address this issue of whether or not it's appropriate for the board, the full board, to order these kinds of reconstructions. Look at the delays in these cases. Let me interrupt you, because I thought I just heard you say that you're not asking for the position and that your answer to this question really is the only available remedy then would be the difference in pay between the GS-13, which by error was not given, and what was paid by the Coast Guard? Also, the liquidated damages. We seek an opportunity to, now that the remedy would be- You mean by liquidated damages. Liquidated, that's the difference in pay. Right, but as I read the statute, that's essentially a double, an enhanced, it's kind of like a willful infringement. It's an enhanced remedy where the violation is willful. You say enhanced, you said liquidated. Right, because the statute in that willful section refers to the lost wages and benefits as liquidated. You're requesting a multiple of the difference in pay? The two times, I mean the lost wages and benefits, and then we seek an opportunity below. Not the lost wages, the difference. Yes, the difference, right. He was employed at the Coast Guard. Yeah, he was employed at the Coast Guard, right, just the differential. Is that a one grade difference or the same grade? One grade, I believe he's G-12 in the Coast Guard, but that still ends up being a fairly substantial- Is the separation for double the difference between the GS-12 and the GS-13? That's what we ultimately seek. We recognize- Based on willfulness? There's no finding of willfulness here. I'm checking, but not what I seek from the court today. I interpreted Judge Moore's- I don't understand why we're here. I thought this was an important question that Judge Moore raised. You say you want reconstruction. Everyone admitted a mistake was made. Right. And so it may very well be that a fair remedy for the mistake is the difference in pay between the GS-12 and 13. I gather that was requested in refuse, or has that been put in? No, it was- Well, originally the administrative judge ordered, without specifying differential, ordered those lost wages and benefits. And what happened is the agency filed a petition for review, and the full board essentially vacated all remedy discussion and just said, all of that's premature. You must go through our reconstruction doctrine. So all that was wiped clean. So yes, Chief Judge Michelle, we recognize that no, at this stage, we don't have a record to show willfulness. We seek that. Mr. Marshall sought discovery below for the purpose of showing the willfulness. We seek an opportunity to do that now- Something you pursue in remand. Exactly. Okay. Sorry for any confusion on that. But what you're really saying is what the board had to do under the law is give Mr. Marshall the differential between the two salaries for the period of 2004 to 2006. Actually, respectfully, Your Honor, I think that continues to this day because in 2006, they didn't offer this position. Well, in fact, didn't the board find that it was not a comparable position even that they offered? Yes. That it differed in many respects, not just location, but job description, all kinds of different respects. Page 29 of the record. That's right, Your Honor. And what was even worse, if you look at, I believe it's further in the record, 60 to 63, you can see the emails at the time that offer was made. I know this is a disputed point, but Mr. Marshall pointed out that this was presented to him like, you better not take this offer. Yes, we'll put something together for you in the budget area, at some division, somewhere in the Atlanta area. And it was a very strong hint to him. Again, this is a contended point, I recognize. But don't take this offer was the message he received. Can I ask you a totally extraneous question? Are you representing the former service member on a pro bono basis? Yes. Good for you. Well, thank you. And I want to emphasize, again, the breadth of the decision that he seeks here. He did not seek an opportunity to cash out and just simply get this differential. He seeks from this court a remedy that will be beneficial to veterans generally. He seeks an opportunity for veterans to get these cases decided for reasons stated to some degree in Judge Moore's opinion in Kirkenwell. What would the practical outcome be if, put aside the money, if we were persuaded that he should be in the position that apparently now is vacant, it was never filled. In the reconstruction, the agency chose not to fill it. So let's assume it's still there as a vacancy. If we were persuaded by your arguments and ordered that he be given that job, would he take it or is he going to stay at the Coast Guard? I don't know that I can answer that question at this point because I don't think he's ever had, well, I know that he's never had the job offered. I mentioned the circumstances of the previous offer, so I'm afraid I can't really say for sure. It would depend on the circumstances of the offer. Should somebody be allowed to say, give me reinstatement without having to add, and if you do, I'll quit the job that I have over at the Coast Guard and go to work at one step higher for HHS as a budget analyst? Well, I read the statute as saying that the award of lost wages and benefits would be independent of whether or not the veteran actually takes the job. Because if it's not independent, then we can have the situation I just outlined where the agency just makes it very clear, you better not take this job. I want a different point. To the extent he's asking for the position, since he holds a different position at a different agency, doesn't he have to certify in order to show the bona fides of his request to be given the position that if he is, he'll quit the Coast Guard and actually start performing the budget analyst duties at HHS? Because otherwise, this whole thing is just a big fiction. Well, I think the fiction is ultimately this reconstruction doctrine. But to address the point, Your Honor, I don't see how the statute imposes that kind of requirement. No, it doesn't. But maybe the courts should. Because otherwise, we're just playing a game. If he doesn't really want the job, and he isn't going to do the job, even if it's awarded to him, then why should we award it to him? Well, he wanted the job. Yeah, as long as it couldn't be the case that he really, really wanted the job and would have taken it at the time. But now the tenor of the feelings in the agency might be such that he might discover at the time it's actually offered to him that it would be so unpalatable that he couldn't go there. Well, that's the concern I mentioned. But also consider the time. This offer was in 2004. He did what he could to sort of mitigate his damages, so to speak, and put his life together in a new position. And so in a way, the agency and the board's reconstruction doctrine would work a perverse effect of taking so long. 29 months he was before the board. And this is all from a passover that occurred in 2004, that it took so long that these other considerations end up being the reasons why he doesn't take the job, if that's what would happen. I don't want to use all your rebuttal time, but I just have one more question, which is, see, what do we do about the fact that the agency canceled the vacancy announcement in this case and decided not to fill the job? I'm a little nervous about do I, if I were to go with you, do I order, they have to put him in this job, or is it at the agency's discretion, this job, or a comparable position? And then, of course, it would be a fact finding by a lower board as to whether or not a job is comparable, kind of like it is in this case. I'm a little nervous about saying the agency must, in fact, put him in this specific job. Maybe they canceled the vacancy announcement for a reason unrelated to him. Maybe they decide they just don't need a person in that job anymore. I mean, I don't think that's the case here, but maybe there could be. So I'm a little nervous as an appellate court for us to say you have to put him back in that position. Well, I would go back to Kerr of the NEA and say essentially he should be entitled to precisely this position with the caveat that we do the best we can under these circumstances. It's not status quo ante 100% necessarily. It's as much as possible. So I think perhaps language alluding to that part of Kerr of the NEA would deal with what Your Honor is concerned about and just recognize that whole divisions are sometimes eliminated. And that would, in those cases, make it more difficult. If the job or the whole set of jobs had been eliminated, then one would have expected the compliance certification by HHS to say we didn't make a selection because guess what? The job has been abolished because we don't need anybody to do that function anymore. But they didn't say that. They seem to have the burden of proof. So then perhaps since they gave no reason for not filling the job, it should be regarded as a failure of proof on their part and that he should have then been placed in that job. Absolutely. Maybe I should have emphasized that more, but certainly to the extent there's any attempt to deviate from that, the burden should be a heavy one on the agency to say why it can't do that. I'm just expressing some sympathy for how it could, in some circumstances, there could be times where that's necessary. But I certainly would hope that there would be a heavy burden on the agency to show why that is necessary. All right. Let's hear from the government and we'll give you back some rebuttal time. Mr. Bowen. May it please the Court. My name is Christopher Bowen and I represent the Department of Health and Human Services. Mr. Dewey stated that the primary issue in this case is one of statutory interpretation and we absolutely agree. We believe that the language of the law mandating that the board must first order the agency to comply after it has found a violative violation and only then make a determination of damages. But that's not really the issue, is it? Here the agency made a mistake. Absolutely. Admitted they made a mistake. They told the would-be employee that they made a mistake. They tried to sort of fix it, but they didn't fix it very well and it wasn't acceptable. And so they were asked to do better. They say, never mind, we're going to wipe out the decision, wipe out the position. And that's a little too cute, I think. That really isn't the way, I think, to compensate for an error, an admitted error. But I must say it doesn't fall so readily into place now five or six years later as to what the proper remedy is. At the same time, the one thing which concerns me is that the action that the agency took after apparently lots of internal turmoil was to say, never mind, we're going to get rid of the problem. We're going to abolish the position. Nobody ever said that the work was abolished. Nobody ever said that the person who was doing the work was moved to another position, didn't take the work with her. It isn't really quite, I think, a straightforward, appropriate way to handle a difficult situation. And I think my question for you is, what, in fact, if we were starting again, should and could the agency have done at that stage when Mr. Marshall said, no, I really don't like what you're now offering me? Whereas the initial position was filled, there was an incumbent, lives were being disrupted. This is, I think, not quite the right answer, because I'm not really sure what to do about it either. But what do you think should have been done at the time? At the time when the agency admitted that it had improperly removed Mr. Marshall's name from consideration, it should have reconstructed the certificate to comply with the board's and this court's prior decisions to determine, and then basically made a decision. If it still needed the position filled, who would it select? And if it would still select Mr. Marshall, it then should have paid him the difference between what he got in his GS-12 and what he would have gotten in the GS-13. So they didn't. They thought they had a quick fix. What do we do about that? Well, the agency, I wouldn't quite characterize it as a quick fix. The agency looked at the facts in September 2008 when the board had ordered it to reconstruct the decision and said, do we still have need of this position? And made the decision that it did not. They didn't say that. They didn't abolish the position. I looked at the certificate. The certificate of compliance simply says no selection is being made. It doesn't say because the position has been abolished because we don't need to work anymore. It, in effect, says we just don't care to fill that vacancy. The certificate of compliance was a model of brevity, I admit. It doesn't say chose not to select from the certificate and canceled vacancy announcement. That's what it says. That is correct. But this is where I would like to stress that Mr. Marshall had the opportunity to object to the agency's certificate of compliance. Indeed, in Andre's, the DVA, the first decision, which was 107 MSPR 455. This guy is pro se in front of the board. So you want us to enforce strict waiver against a pro se who's the beneficiary of preferential treatment at the command of the Congress of the United States? This court does make many allowances for pro se petitioners. The board does as well. However, one of those cases would be 4C v. Principi. However, in that case, it is an allowance for the interpretation of what they submit. However, in this case, Mr. Marshall submitted nothing. He submitted absolutely nothing. Your strongest argument is we should say he's waived the issue. That is one of the arguments in support of the December 2008 decision. The other argument in support of the December 2008 decision is that the board, with the evidence it had in front of it, has substantial evidence to justify its decision. The board had, in a September 2008 decision, had ordered the agency to remove the incumbent, to re-select or to list the three people it would consider, and then to come back with a decision as to how it wanted to choose to fill the position. The agency, obviously very nervous after the board had threatened the salary of the person in charge, brought back evidence that had removed the incumbent. It had then subsequently reconstituted the list. And then looking at their needs, they had decided that they opted not to make the choice. There was nothing in there about we looked at our needs. Come on. You're putting words in the certificate of compliance that are distinctly not there. The agency opted not to make a choice. We don't know why. It's not indicated why. But they had the burden to explain why they didn't hire him. And they didn't explain. The board, based on the evidence it had in front of it, decided that, based on all that evidence it had, that the agency had complied. So the board- Is there any evidence in front of the board that the work was no longer needed, and therefore the position was being abolished? There was no evidence of that, Your Honor. Let me point something else out to you. What the agency is asking for and what has been discussed is reconstruction, not new construction. I find it unpalatable that the agent would say four years later, after someone served in the position for two years, that they're canceling the vacancy. Reconstruction means go back and look at the facts as they existed at the time. The agency didn't cancel the announcement. The agency hired someone. She functioned in the job for two years. They moved her to the desk next door and then said, they're not going to mysteriously hire anyone for this position. So under a reconstruction theory, as opposed to a new construction theory, how is canceling the vacancy announcement possible? But we know they didn't cancel it. They hired. They did not cancel it in 2004. They did, in fact, hire Mr. Bredebrink. Isn't 2004 the right time frame? The agency believes that it definitely would have been the right time frame in 2004, but based on the fact that they thought they were, based on the requirements of the position in 2008, they thought they interpreted and we interpreted the borrower's order as saying, if you choose to fill a position with someone, you must submit your reasons. So we interpreted it as being a present time frame. In, I believe, Lodge, a case from the MSPB, the court actually, or the board, allowed consideration of a post-finding of violation event. Specifically, the agency had received a notification from OPM that he would not be qualified for the position. And in that, the board upheld the agency's decision not to select him, even though the OPM certificate had not come in until after there had already been a VOA violation found. How does that help you here? Well, it shows that post-VOA... No one is saying, this guy's incompetent. He couldn't do the work. He fraudulently misrepresented his credentials. His suitability to do the functions of the position are not challenged. That is correct. Then what relevance does it have that in some other case, it turned out the person wasn't competent to do the work? Well, it has relevance to the extent that it shows that a post-VOA violation event that happens after the finding can, in fact, have some relevance in the determination. Yeah, but there aren't any such facts in this case. So why do we care that in another case with different facts, you might get a different outcome? Well, the fact that I'm trying to draw an analogy to is the fact that the agency opted not to make a selection. Now, obviously, we prefer that there be more effort. What assurance can you give us that the agency wasn't just livid with this guy who had made so much trouble for them, and said, we'll fix him. We'll just not fill the job and he'll get nothing. What assurance can you give us that that's not what really happened? Other than the presumption that federal employees generally act in good faith, there is nothing in the record. Wait, but you're waving. The government would argue it is good faith, that you are perfectly entitled to cancel a vacancy announcement because you don't want to hire a particular individual. Absolutely. You've argued that in other cases to us. Yes. Right? So you wouldn't necessarily even think that it's bad faith to do that. Right. That is absolutely correct. I interpreted Chief Judge Michelle's argument or question as what evidence is there in the record that it was not the decision to cancel was not simply made out of spite. And my response to that is that, one, there has been no evidence of spite prior to that. The removal. There's no evidence at all that it wasn't out of spite. There's no evidence in the record that the end, would certainly suggest it was out of spite. The incredulity with which this panel confronts you doesn't give you that impression. To the extent that Mr. Marshall challenges why the agency made that selection, he had his opportunity to say something, to say anything, as the board noted in his December 2008 decision. Just back to waiver. If we agree with you on waiver, the case is over. We might not agree with you on waiver for a pro se. Right. Does this position still exist today? It is not filled. I'm not sure. Does it exist? I'm not sure, Your Honor. Have you had discussions with agency counsel? I have. About this position, they said that this obviously is not in the record, but without waiving any attorney client privilege, they have said that they have no intention to fill it right now. Why not? Once again, without waiving any privilege or anything like that, with discussions, they said they simply do not need that budget analyst position. Because Ms. Rosario, is that her name, Ms. Rosario? She's already doing the job in a newly created different position that they moved her into? She was actually moved into a part of HHS which deals with counterterrorism. So I do not believe that she is as close to- You didn't just transfer all the work over. No, that is not my impression from what the agency has told me. Ms. Beach has been transferred over to another position and the board has, I believe in the second decision in Weed, the second board decision in Weed, how that is not in fact required to in fact totally fire the incumbent from service, it's simply required to remove them from the position. Mr. Dewey isn't asking that Ms. Beach be fired. He's just asking that there be some compensation or effort to make whole his client. Yes. You're saying no, we're not going to make him whole because we don't have to. We are saying that we have complied with the board's decisions, with the board's order, with the November 2007 decision that said, while you have conceded that you violated VIOA by removing his name from the list, we're not going to make a determination as to the amount of damages until we get the reconstruction. We believe that that decision was correct in as much as it reversed the May 2007 decision from the administrative judge. But in this case, doesn't reconstruction mean add Marshall's name back in as the number one guy on the list of three or more? No. Reconstruction in this case means that they definitely have to consider who is available for the position and based on- You said who's available for the position now or who applied for the position? The agency reconstructed based on who was available for the position in 2004. So they have to put him back on the list. Yes, they do. And because of their prior evaluation, he goes back on the list as the number one candidate of an array of candidates. I believe that is how it was ranked on the certificate. But so you're not arguing that the offer that the agency made in the course of all this to offer him the GS-13 position was adequate? Much as I regret it, I did not present that in the briefs. It was presented before the board many times. But the board made a fact finding that it wasn't a comparable job. How do we dispute that? And if there is an obligation to make him whole, offering him a job as a janitor at GS-5 is not going to make him whole. And I realize that may not have been the offer, but the bottom line is if there's a fact finding it's not comparable, we're kind of hamstrung there. That is correct. Because if we're talking about a pay differential, the pay then he was offered the higher paying job. He was offered the exact same pay in the exact same location, and they were trying to make it a budget analyst as close as they could come. But you're not arguing that anymore? I would like to, yes. But I admit that I did not put it in the brief. So the answer is no, I'm not arguing that. Sadly, yes. If I could just briefly turn to the issue of willfulness. The government believes that this issue is not probably before this court. The May 2007- Who said that? I don't think there's any dispute that the issue of willfulness is not before us at this time. Well, we believe that there's already been a decision on willfulness that should be affirmed. That the May 2007 decision looked at all the factors and said, no, it was an honest mistake to remove his name from consideration. And that was the determination. Also, we don't speak to willfulness. It's not really an appeal to us right now, is it? I see that my time has expired. May I continue? Yes. Oh, thank you. We believe that to the extent willfulness was an issue, but because it was an issue in the May 2007 and the judge decided that there was no willfulness, then the only time it's been raised again, as far as I can tell, is in the final sentence of the opening brief. Where he says, well, I want a remand for willfulness. However, that didn't provide the court with any record citations or any case authority, especially invoking the reckless disregard center that has been used in some of the board decisions as to why the May 2007 decision finding no willfulness. That sounds like what you're saying is his argument is we reject it. But the question was whether it's before us. You said, no, it's not before us. Now, which is it? Is it before us as a weak argument, or is it not properly before us at all? I would argue that it is a weak argument, and number two, it is not properly before us at all, because arguments which are not presented with record citations are waived. Wait a minute, but I'm looking back now and I see that the MSPB in one of the many iterations of this case earlier on vacated that portion of the initial decision that decided willfulness when it ordered reconstruction rather than reinstatement and explicitly contemplated that liquidated damages might still be available. That's what I understand from the MSPB. I'm not quoting verbatim, but I understood that that decision was vacated. I mean, I realize there's a lot to keep track of here in terms of how many decisions occurred here, but I don't think that they're precluded from willfulness later on based on that. I don't think it's before us either. All right, time has expired. Thank you very much. Mr. Dewey, two minutes of rebuttal. Just briefly on willfulness, again, and I can certainly concede it's not before the court. I'm just trying to avoid a misunderstanding in the interpretation by the board of a remand order, just to be clear that there's nothing in the court's decision that precludes Mr. Marshall from renewing his discovery. I think we understand the opportunity you're trying to preserve. And I think my regret, Judge Moore, is I didn't think of the term new construction as a good way to describe what's going on at the board. And I think it's important to see this case in terms of not just Mr. Marshall's situation, but Andres, Dow, Weed, Williams, and others. All these cases that involve VEOA reconstructions have all involved this new construction. We are no longer looking backward at what happened at the time of the violation. We're doing a fictitious exercise in which the agency gets to decide what history, history books, how they read. Tell me, because I don't think I understand. What is it? You characterized sort of what you interpreted my thoughts on this case to be sort of a narrow holding that would benefit Mr. Marshall. But you were asking for something broader. And I guess I don't fully appreciate what that broader thing is. Everything should be done in 120 days, if at all possible. Reconstruction is almost certainly going to go a lot longer than that. In all of the cases I mentioned, just if you go from the reconstruction order to the final decision of the board, at least 18 months. Congress meant for all to be done, the entire case at the board, to be done in four months. And so my hope, Mr. Marshall's strong hope, is that the court will put a stop to this. Everything should be done in the initial proceedings before the administrative judge, if at all possible. Recognizer could be some cases. Merit promotion certificates come to mind, where it could be that a reconstruction. But I don't understand. What is it you're asking us to do? You want it all done in 120 days. And so we should rule if it's not done in 120 days. Every veteran who doesn't get their final say by that point gets what? A million dollars? I mean, what happens? What is the magic solution? Well, Congress already provided an opt-out to district court. So I'm hoping that the federal circuit will give guidance to the board that it should not let this go beyond. I mean, I don't know that there's necessarily a remedy. So you just want a one-liner speed-up? What? I mean? To put it bluntly, sure. Something that says that don't let it go beyond. Don't do remands that are unnecessary, that could have been dealt with in the initial proceedings before the AJ. Because if there is any lack of an indication like that from this court, the status quo will continue. We'll have veterans waiting years to seek redress for jobs they applied for years prior. We'll have all the problems that you would outline, Judge Moore, in Kirkendall. And of course, that was from the government perspective. And it's even worse from the perspective of a disabled veteran applying for a federal job. Thank you. We thank both counsel. The appeal is taken under advisement.